Jess M. Krannich (Utah Bar No. 14398)
MANNING CURTIS BRADSHAW & BEDNAR PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111-1180
Tel: (801) 303-0034
Fax: (801) 364-5678
jkrannich@mc2b.com

Gabriel E. Bedoya (Pending *Pro Hac Vice* Admission)
HONIGMAN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226-3506
Tel: (313) 465-7254
gbedoya@honigman.com

*Attorneys for Plaintiff AAAG-California, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AAAG-California, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ABDUL R. KISANA, JACK METCALF, SPECIALIZED SALES AND LEASING, LLC, and LUXURY AUTO GROUP, LLC,<br><br>Defendants. | **MOTION FOR TEMPORARY RESTRAINING ORDER AND APPOINTMENT OF RECEIVER**<br><br>Civil No. 2:20-cv-00026-CMR<br><br>Magistrate Judge Cecilia M. Romero |

## STATEMENT OF RELIEF REQUESTED

Plaintiff AAAG-California, LLC ("AAAG" or "Plaintiff"), through its undersigned counsel of record, hereby submits its Motion for Temporary Restraining Order freezing the assets of Defendants Abdul R. Kisana ("Kisana"), Jack Metcalf ("Metcalf"), Specialized Sales and Leasing, LLC ("Specialized Leasing"), and Luxury Auto Group, LLC ("Luxury Auto")

(collectively "Defendants") and enjoining Defendants from selling, transferring, or otherwise disposing of the 43 vehicles they agreed to purchase from AAAG but failed to pay for; and for an order appointing a receiver for the purpose of entering and taking possession of Defendants' automotive dealerships and accounting for, managing, and protecting all of Plaintiffs' assets that have been wrongfully retained by Defendants.

## INTRODUCTION

This case involves an auto dealer's failure to pay for vehicles purchased through a California auction company, and the fraud and conversion that followed. Defendant Abdul R. Kisana ("Kisana"), with his companies Specialized Sales and Leasing, LLC ("Specialized Leasing") and Luxury Auto Group, LLC ("Luxury Auto"), purchased 43 vehicles from Plaintiff AAAG-California, LLC ("AAAG"). Despite his prior history of payment, Kisana failed to pay off the $2.2 million balance that he accumulated between August and October 2019 by purchasing these vehicles. Kisana then fraudulently misrepresented his financial resources and delayed his payment to AAAG, until AAAG ultimately demanded payment and he refused to pay what was contractually owed.

AAAG has since discovered that Kisana had been secretly working with a now former employee at AAAG to steal the titles to the 43 vehicles from AAAG. With stolen titles, Kisana has also begun selling the 43 vehicles either through his two companies, Specialized Leasing and Luxury Auto, or through other dealerships throughout the country. When confronted by AAAG, Kisana refused to satisfy his debts and instead objected to AAAG's demands for payment. Kisana has also continued listing the 43 vehicles for sale and continues to threaten to sell them without satisfying his contractual obligations to AAAG.

Although AAAG has informed law enforcement of Kisana's actions, AAAG fears for the continued loss of its property, valued at approximately $2.2 million, and the risk that by the time judgment is reached in this matter, AAAG's property will have been transferred to unsuspecting consumers and AAAG will not have effective recourse against Defendants.  AAAG accordingly initiated this litigation to request the Court's intervention.  In particular, AAAG requests that the Court order the return of the 43 vehicles that Kisana has converted or, in the alternative, order Defendants to pay AAAG the full value of the vehicles of approximately $2.2 million.  AAAG further requests that the Court provide AAAG equitable relief against Defendants and grant Plaintiff's Motion for Temporary Restraining Order and Appointment of Receiver.  In particular, AAAG requests that the Court freeze Defendants' assets and enjoin Defendants from further dissipating all of AAAG's property.  AAAG further requests that the Court appoint a receiver for the purpose of for the purpose of entering, taking possession, managing, and protecting certain assets, including taking possession of and temporarily operating Defendants' two automotive dealerships in Salt Lake City, Utah..  Finally, AAAG requests that the Court grant AAAG any other relied that the Court deems just and proper.

## STATEMENT OF FACTS

Plaintiff AAAG runs an auto auction company in Southern California, selling used luxury vehicles to auto dealers headquartered throughout the country. (Karasek Aff. at ¶ 3).  Although AAAG may pay the seller for the vehicle to be auctioned, the vehicle's title is only transferred to the auction's buyer upon AAAG's receipt of payment. (Karasek Aff. at ¶ 5).  Depending on the frequency and magnitude with which an auto dealer purchases vehicles at AAAG's auctions, AAAG provides certain dealers the privilege to process their payment with greater flexibility.

(Karasek Aff. at ¶ 6). Still, regardless of the buyer's payment term, AAAG does not provide the auction's buyer with the vehicle's title until AAAG has received the full payment. (Karasek Aff. at ¶ 7).

Defendant Kisana has been purchasing vehicles from AAAG since 2018. (Karasek Aff. at ¶ 16). Based on the frequency and magnitude of Kisana's purchases, AAAG had identified Kisana as a "privileged" dealer, and Kisana was afforded greater flexibility in paying for the vehicles he purchased at auction. (Karasek Aff. at ¶ 16). Although at times AAAG barred Kisana from making additional purchases until he cleared his account and paid his outstanding balance, Kisana had always ultimately satisfied his obligations to AAAG and thus kept his "Privileged Status." (Karasek Aff. at ¶ 17).

However, by the end of 2019, Kisana radically altered his behavior as a privileged dealer, and ultimately refused to pay the $2.2 million he owed AAAG following his purchase of 43 vehicles. (Karasek Aff. at ¶¶ 21, 26). Instead of paying AAAG what he contractually owed, Kisana misrepresented his ability to pay the outstanding sum and defrauded AAAG into delivering 43 vehicles to Kisana's possession. (Karasek Aff. at ¶¶ 25, 99–101).

Following an investigation in December 2019, AAAG further determined that Kisana had relied on the assistance of a now former employee at AAAG, who shipped the titles of 43 vehicles to Kisana's dealerships in Salt Lake City, Utah—without the knowledge of or authorization by AAAG. (Karasek Aff. at ¶¶ 65, 114). With possession of both the vehicles and their titles, Kisana has converted AAAG's property, only to then retail the vehicles to consumers, as well as other dealerships throughout the country. (Karasek Aff. at ¶ 109; Exhibit B, DMV Records). Although AAAG has been unable to identify the location of each vehicle at issue, AAAG has learned that

Kisana has already sold some of the vehicles to presumptively unknowing buyers. (Karasek Aff. at ¶ 109).

Kisana has refused to pay the amount owed and has rejected AAAG's efforts to come up with a plan for payment. (Karasek Aff. at ¶¶ 42, 78). Instead, Kisana informed the AAAG managers that he had paid for the vehicles in question and that, if they continued to pursue him on this matter, he would call the Utah Department of Motor Vehicles ("DMV") and ask them to determine ownership based on whoever possessed the vehicles. (Karasek Aff. at ¶ 44). Kisana claimed that, in Utah, a consumer owned a vehicle if they had possession of the vehicle and its title—thus barring any claim for payment from AAAG. (Karasek Aff. at ¶ 45).

In light of Kisana's threats to rapidly pass off the unpaid vehicles and stolen title to third parties, AAAG filed suit and has submitted its Motion for a Temporary Restraining Order and Appointment of Receiver to stop the furtherance of Defendants' wrongful actions.

## ARGUMENT

Plaintiff seeks relief to prevent the concealment and/or loss of their property, as well as to prevent Defendants from committing additional fraud on unknowing consumers. Specifically, Plaintiff requests this Court to: (1) grant a Temporary Restraining Order freezing Defendants' assets to prevent the concealment or transfer of AAAG property; (2) grant a Temporary Restraining Order enjoining Defendants from the sale, transfer, or other disposal of any vehicles they acquired from AAAG to prevent further fraudulent transfer of title; and (3) appoint a receiver

to take possession of Defendants' dealerships, perform an accounting, and facilitate and oversee locating and transferring all of AAAG's property back to the rightful owner.

### I.     The Court Should Grant a TRO to Prevent Fraud and Loss of Property

A Temporary Restraining Order freezing Defendants' assets and enjoining the sale of additional vehicles is necessary to prevent the loss and concealment of AAAG's property. Defendants have already attempted to sell the vehicles that they had acquired from AAAG, without providing AAAG with payment, to potentially unsuspecting consumers. The sale and fraudulent transfer of these vehicles impairs AAAG's ability to recover its stolen property, and continues a fraudulent scheme to sell stolen vehicles with their stolen titles.

District courts possess "equitable discretion" in deciding "whether to grant or deny injunctive relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394, 126 S. Ct. 1837, 1841, 164 L. Ed. 2d 641 (2006). "[S]uch discretion must be exercised consistent with traditional principles of equity." *Id*. To obtain a preliminary injunction, a party must establish: "(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest." *Valley Community Preservation Com'n v. Mineta*, 373 F.3d 1078 (10th Cir. 2004); *see also Klein-Becker USA, LLC v. Product Quest Mfg., Inc.*, 429 F. Supp. 2d 1248 (D. Utah 2005).

AAAG hereby requests that the Court enter a Temporary Restraining Order under Fed. R. Civ. P. 65(b).

### A.     AAAG is Likely to Succeed on the Merits of Its Case

AAAG is likely to succeed on the merits of its case, given the substantial evidence showing that there was a conversion of the titles and failure to pay for the vehicles.

AAAG has video and documentary evidence of a now former employee, Milagros Cossyleon Tapia ("Cossyleon" or "Mila"), aiding Defendants in the wrongful conversion of vehicle titles. (Exhibit C, Still Shots of Relevant Video Surveillance). FedEx logs of outgoing packages from AAAG show four packages leaving the location to Specialized Leasing on December 4, 2019, December 10, 2019, December 13, 2019, and December 16, 2019. (Exhibit D, FedEx Logs). Those four packages were purchased outside of the corporate account. They were paid for personally and sent from Cossyleon to Kisana. Video surveillance from November 25, 2019 also shows Cossyleon taking titles from the safe and placing them in a FedEx envelope on the date of these shipments to Specialized Leasing. The tracking numbers for these packages show that Kisana and his agent Defendant Jack Metcalf signed for the deliveries. (Exhibit E, FedEx Delivery Confirmation).

Defendants have tacitly admitted to possession of the titles, and DMV records show that the titles have been used in sales from Specialized Leasing. (Exhibit A, Affidavit of Jon Karasek). AAAG also has receipts and logs with the titles and VIN numbers of the vehicles, which show that they have been purchased by Defendants. (Exhibit F, VIN Report of All Vehicles Sold). And AAAG has bank records that prove no payment was made for any of these vehicles.

The overwhelming weight of the evidence shows that Defendants purchased 43 vehicles from AAAG and have failed to pay for those vehicles. The evidence also shows that, while Defendants strung AAAG along, continually promising payment, they were working in secret with

Cossyleon to steal the title documents for those vehicles so that they could fraudulently re-sell those vehicles to the public.

### B. Without Injunctive Relief, AAAG Will Be Irreparably Harmed Through the Loss of Property and Concealment of Evidence

Without injunctive relief, AAAG will be irreparably harmed through the loss of its property and concealment of further evidence. Defendants have already taken action to hide their assets and avoid collections from this sale. When AAAG has had conversations with Kisana about financing the vehicles and paying the account, he has claimed that no money is owed. In the same discussion, Kisana admitted that he is attempting to sell the inventory as quickly as possible in order to make it more difficult for AAAG to recover the vehicles, for which he has not paid and has converted the title documents. *See* Karasek Aff. at ¶ 44–45.

Defendants are financially unstable and allegedly intend to use available capital from the sale of these cars to facilitate their purchase of an auto dealership in Salt Lake City, Utah. Freezing Defendants' assets is necessary to preserve the proceeds from the wrongful re-sale of these cars and to prevent the mismanagement and potential insolvency of Defendants. Defendants' plan is apparently to move the 43 vehicles to new owners—some of which are out of state—and to quickly inject the proceeds into a local franchise dealership. In fact, they have already begun these efforts. DMV records show that VIN numbers associated with some of the vehicles in question have already been involved with sales and transfers to consumers. (Exhibit B, DMV Records of VIN Numbers). Defendants have even sold some vehicles to other dealerships around the country. (Exhibit G, Chicago Motor Cars Record). Defendants have advertised the stolen vehicles on Specialized Leasing's and Luxury Auto's public accounts. (Exhibit H, Specialized Leasing Social Media Posts (September and October 2019)).

Without an injunction, Defendants will likely move their assets to a different entity in order to frustrate AAAG's efforts to recover its property and avoid any judgment. AAAG will therefore suffer irreparable harm without the grant of injunctive relief. *See Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir.1986) ("Difficulty in collecting a damage judgment may support a claim of irreparable injury."); s*ee also Bad Ass Coffee Co. of Hawaii v. JH Nterprises*, 636 F. Supp. 2d 1237, 1250 (D. Utah 2009) ("Accordingly, BACH's showing of irreparable harm is strengthened by the real possibility that the Defendants could not answer in damages."); *In re Tabernash Meadows, LLC,* No. 03–24392 SBB, 2005 WL 375660, at *15 (Bankr. D. Colo. Feb. 15, 2005) (finding an inadequate remedy at law when the moving party's "ability to collect a money judgment against [the non-moving party] is speculative at best").

### C.     The Benefit to AAAG Far Outweighs the Burden on Defendants

While the grant of injunctive relief would prevent further fraud, concealment of evidence, and further injury to AAAG by preserving their property, Defendants can claim only that an injunctive award might stall their (illegitimate) expansion into the local auto market. However, this is precisely the reason why relief should be granted. "[W]hen a party knowingly takes actions that increase the potential for harm if an injunction is ordered against them, courts give those harms little weight in the balancing test." *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002); *see also Acceleration Prods. v. Arikota, Inc.*, 2014 U.S. Dist. LEXIS 111550, at *6 (D. Utah Aug. 7, 2014) (holding that "any harm to defendants is self-inflicted.").

By attempting to acquire another business with proceeds from fraudulent transfers, Defendants continue to muddy the waters and shift the assets that they wrongfully possess.

9

Additionally, these actions further a continuation of fraudulent title transfer to Utah consumers. Denial of a temporary restraining order would benefit Defendants, but only insofar as it would allow them to profit from their wrongdoings.

        **D.**      **A Temporary Restraining Order Benefits the Public by Protecting Consumers**

Enjoining the sale of these cars is necessary to prevent the fraudulent transfer of title to consumers and to preserve evidence for a potential criminal investigation as well. Defendants have stated multiple times that they intend to expand their auto retailing operations and increase their capacity to sell vehicles, including the unpaid for vehicles from AAAG with stolen titles.

For these reasons, injunctive relief is just and necessary in this case. AAAG respectfully requests that this Court grant a Temporary Restraining Order against Defendants temporarily freezing Defendants' assets and enjoining the further sale or transfer of these vehicles.

        **II.**      **Appointment of a Receiver is Necessary to Facilitate the Freezing of Assets**

In order to facilitate the fair application of an order freezing Defendants' assets and enjoining the sale or transfer of the stolen vehicles and their titles, AAAG requests that this Court appoint a receiver. "The appointment of a receiver by a federal court may be sought by any person or class having an interest in property that a statute or one of the general principles of equity authorizes the court to project by this remedy." Wright & Miller, Federal Practice and Procedure § 2983.

Federal Rule of Civil Procedure 66 recognizes and governs an action in which a receiver is appointed. A party may be entitled to the appointment of a receiver by contract and in circumstances where equity requires the appointment. *See Chen v. Stewart*, 100 P.3d 1177, 1190 (Utah 2004) (receiver appointed pursuant to equitable powers of court). The receivership should

"accord with the historical practice in federal courts or with a local rule." *EarthGrains Baking Companies, Inc. v. Sycamore Family Bakery Inc.*, No. 2:09CV523DAK, 2018 WL 5776545 (D. Utah) (citing Fed. R. Civ. P. 66).

The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *Id*. The factors for considering the appointment of a receiver under Fed R. Civ. P. 66 include: "(1) the validity of the claim of the party seeking a receiver; (2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; (3) imminent danger that property will be concealed, lost, or diminished in value; (4) inadequacy of legal remedies; (5) lack of less drastic remedy; and (6) the likelihood that appointing a receiver will do more harm than good." *EarthGrains Baking Companies,* 2018 WL 5776545 (citing Fed. R. Civ. P. 66). While all of the factors do not need to be present, the Court has broad discretion to consider a number of factors for whether or not to appoint a receiver. *See e.g., New York Life Ins. Co.*, 755 F. Supp. 287, 292 (E.D. Cali. 1991); *Fleet Bus. Credit, L.L.C. v. Wings Restaurants, Inc.*, 291 B.R. 550, 556 (N.D. Okla. 2003).

The majority of the factors weigh in favor of appointing a receiver in this case.  As AAAG has demonstrated, its claims against Defendants are valid and the likelihood of its success on the merits is strong.  Additionally, AAAG has alleged a high level of fraud that continues to be perpetrated by Defendants.  Not only have the Defendants committed fraud by procuring the vehicles and their titles in the first place, but they continue to fraudulently transfer title to consumers in the Salt Lake City area and throughout the country without having lawfully purchased the vehicles.

There is also significant reason to fear Defendants' insolvency and fraudulent concealment of their assets. A neutral party is necessary during the pendency of this litigation to perform an accounting of the stolen property and ensure that the property is not lost or further dissipated. The vehicles, for which Defendants have not paid, and the accompanying titles are currently in the process of being moved to third parties, where they will become difficult to track and impossible to recover. The longer these vehicles and titles remain subject to this dispute and potential re-sale without an injunctive order and receiver in place, the greater the likelihood they will be transferred and their value diminished, preventing AAAG from recovering its losses.

Given the lengths that Defendants have gone to and the level of wrongdoing that they have committed, working secretly through one of AAAG's own employees, this remedy is not a drastic one. Kisana is a sophisticated auto dealer and his companies have a nation-wide reach. Despite multiple demands from AAAG to return the titles and stop selling the vehicles, Kisana continues to push these vehicles into the market. He has constantly evaded AAAG's communications and meetings, and without a neutral third party, the property that is subject to this dispute will be diminished or concealed and AAAG may be left without any effective remedy.

For these reasons, AAAG requests this Court to appoint a receiver to oversee and implement an order freezing Defendants' assets and an accounting of AAAG's vehicles and titles that remain wrongfully in Defendants' possession .

## **CONCLUSION**

AAAG has attempted to come to an amicable solution with Defendants and arrange for payment in the normal course of business dealings. Not only have Defendants rejected these offers, they have stalled these discussions in order to complete a scheme to convert property from

AAAG and re-sell that property to individual buyers and other nation-wide competitors.  Equitable relief is needed to protect the property which is subject to this dispute and to halt the fraudulent scheme that Defendants continue to this day.  For these reasons, AAAG requests that this Court enter a Temporary Restraining Order and appoint a receiver.

Dated:  January 15, 2020

Respectfully submitted,

/s/ Jess M. Krannich
Jess M. Krannich Utah Bar No. 14398)
MANNING CURTIS BRADSHAW &
BEDNAR PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111-1180
Tel: (801) 303-0034
Fax: (801) 364-5678
jkrannich@mc2b.com

Gabriel E. Bedoya (Pending *Pro Hac Vice* Admission)
HONIGMAN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226-3506
Tel: (313) 465-7254
gbedoya@honigman.com

*Attorneys for Plaintiff AAAG-California, LLC*

13

**Index of Exhibits for *AAAG-California, LLC v. Abdul Kisana, et al.***

*Motion for TRO and Appointment of Receiver*

| Exhibit | Document |
|---|---|
| A | Affidavit of Jon Karasek |
| B | Selection of DMV Records |
| C | Still Shots of Relevant Video Surveillance |
| D | FedEx Logs (showing four packages out) |
| E | FedEx Delivery Confirmation (shows signature) |
| F | VIN Report of All Vehicles Sold |
| G | Chicago Motor Cars Record |
| H | Specialized Leasing Social Media Posts (September and October 2019) |