IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| AAAG-CALIFORNIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ABDUL R. KISANA, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:20-cv-00026-HCN-JCB<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Jared C. Bennett |

District Judge Howard C. Nielson, Jr. referred this case to Magistrate Judge Paul M. Warner under 28 U.S.C. § 636(b)(1)(A).[1] Due to Judge Warner's retirement, this case is now referred to Magistrate Judge Jared C. Bennett.[2] Before the court is the Court-Appointed Receiver, Jonathan O. Hafen's ("Receiver"), Motion for Order Directing Turnover and Transfer of Vehicle Titled in the Name of Natalie Philpot ("Mrs. Philpot") ("Motion").[3] Mrs. Philpot's husband, J. Morgan Philpot ("Mr. Philpot"), filed the only opposition to the Motion.[4] The court has carefully reviewed the written memoranda submitted by the parties. Under DUCivR 7-1(f),

---

[1] ECF No. 70.

[2] ECF No. 215.

[3] ECF No. 240. The Receiver brings the Motion under the summary disposition procedure previously approved by the court. ECF No. 338. That procedure permits the Receiver to initiate summary proceedings in this action to obtain rulings on ownership interests in certain property and/or rulings regarding whether transfers of certain property are voidable or fraudulent.

[4] ECF No. 413.

the court has concluded that oral argument is not necessary and, therefore, decides the Motion on the written memoranda. Based upon the analysis set forth below, the court concludes that Mr. Philpot has no standing to assert the arguments he proffers in opposition to the Motion. Therefore, the court grants the Motion.

## BACKGROUND

Judge Nielson's preliminary injunction order[5] provides that Defendants Abdul R. Kisana ("Mr. Kisana"); Specialized Sales and Leasing, LLC; and Luxury Auto Group, LLC (collectively, "Defendants") acquired 43 vehicles from Plaintiff AAAG-California, LLC without payment. One of those 43 vehicles is the subject of the Motion: a 2015 BMW X3, VIN 5UXWY3C50F0E95418 ("BMW").[6] In a letter Mr. Philpot sent to the Receiver's counsel in May 2020 concerning the BMW, Mr. Philpot states that he "asked that [Mr. Kisana] put the car in [Mrs. Philpot]'s name back in December 2019" when the vehicle was transferred because Mr. Philpot "intended for [Mrs. Philpot] to be the primary user of the vehicle."[7] There is no evidence that Mr. Philpot ever held title to the BMW or ever transferred it to Mrs. Philpot. The transfer occurred directly between Mr. Kisana (or one of the Defendant entities) and Mrs. Philpot. The parties agree that the BMW is now registered in Mrs. Philpot's name and that she alone holds title to it.[8] The Motion seeks an order directing Mrs. Philpot to transfer ownership and

---

[5] ECF 61.

[6] ECF Nos. 240-2, 240-3.

[7] ECF No. 240-4.

[8] ECF Nos. 240-2, 240-3.

possession of the BMW to the Receiver. Mr. Philpot, who is not and has never been the BMW's owner, opposes.

## ANALYSIS

For the reasons set forth below, the court concludes that: (1) Mrs. Philpot has sole ownership of the BMW under Utah law; and (2) Mr. Philpot lacks standing to challenge the transfer of the BMW to the Receiver.[9] The court addresses each of those issues below. For the reasons set forth below, the court grants the Motion.

**I.      Mrs. Philpot Has Sole Ownership of the BMW Under Utah Law.**

Under Utah law, a spouse is entitled to enter contracts, incur liabilities, and hold property individually in his or her own name as if he or she were unmarried. *See, e.g.*, Utah Code Ann. §§ 30-2-2 ("Contracts may be made by a wife, and liabilities incurred and enforced by or against her, to the same extent and in the same manner as if she were unmarried."); 30-2-4 ("A wife may receive the wages for her personal labor, maintain an action therefor in her own name and hold the same in her own right, and may prosecute and defend all actions for the preservation and protection of her rights *and property* as if unmarried. (emphasis added)); 30-2-5(1)(b) (providing, in relevant part, that "[n]either spouse is personally liable for the separate debts, obligations, or liabilities of the other . . . contracted or incurred during marriage"). Here, it is undisputed that Mr. Philpot never held title to the BMW. Instead, Mr. Philpot concedes that Mrs.

---

[9] The court acknowledges that the Receiver did not raise Mr. Philpot's lack of standing in the Motion. However, the court has an independent obligation "satisfy itself that the parties have standing to invoke the power of the federal courts." *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1280 (10th Cir. 2002).

3

Philpot received title to the BMW directly from Mr. Kisana (or one of the Defendant entities) in her own name.

Despite not ever having been an owner of the BMW, Mr. Philpot defends it as if it were his own property. However, at best, all Mr. Philpot has in the BMW is a future interest that is contingent upon either a divorce from Mrs. Philpot or Mrs. Philpot's death. *See, e.g.*, *United States v. All Assets Held in Account No. XXXXXXX in name of Doraville Properties Corp.*, 299 F. Supp. 3d 121, 135 (D.D.C. 2018) (providing, in the civil forfeiture context, that "heirs—even actual heirs—who have a future, contingent interest in property lack standing to contest a forfeiture of that property" (citing cases)); *In re Christensen*, 561 B.R. 218, 228-29 (Bankr. D. Utah 2016) (providing that "until a divorce decree is entered one spouse does not have ownership to property tilted in the other spouse" and that it is a divorce decree that "vests an ownership interest in the spouse to whom the property is awarded") (quotations, citations, and footnotes omitted)), *aff'd sub nom. West v. Christensen*, 576 B.R. 223 (D. Utah 2017). Therefore, Mr. Philpot has no actual, choate ownership interest in the BMW.

**II.     Mr. Philpot Lacks Standing to Challenge the Transfer of the BMW to the Receiver.**

Given that Mr. Philpot never did and does not currently hold a choate ownership interest in the BMW, he lacks standing to contest the BMW's transfer from Mrs. Philpot to the Receiver in this summary proceeding. "Lack of standing to assert a claim means that the Court does not have subject matter jurisdiction over the matter." *In re Baker*, No. 09-12997, 2013 WL 5786429, *1 (Bankr. N.M. Oct. 28, 2013) (analyzing standing in the context of an adversarial proceeding in bankruptcy, which is similar to the summary proceedings involved in this action) (citing *Denver Health and Hosp. Authority v. Beverage Distributors Co.*, LLC, 2013 WL 5539624, at *3

4

(10th Cir. 2013) citing *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1222 (10th Cir. 2011)). To have standing under Article III, a claimant must assert an injury, among other things. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An "injury" means "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quotations and citations omitted). "[T]he 'injury in fact' test requires . . . that the party seeking review be himself among the injured." *Id.* at 563 (quotations and citation omitted). Thus, to establish standing, Mr. Philpot would have to establish that he will personally suffer an injury to his own concrete, particularized, non-hypothetical interests in the BMW.

Mr. Philpot cannot prove an injury because he, personally, does not have a legally protected, concrete, non-hypothetical injury in the BMW. At best, he has a future property interest contingent upon either divorce (assuming that the state court would recognize the BMW as "marital property") or death (assuming that the state court would award Mr. Philpot with the BMW in either intestate succession or pursuant to a devise from Mrs. Philpot). Such a speculative interest is not sufficient to prove an "injury" under Article III's standing requirement. *All Assets Held in Account No. XXXXXXX in name of Doraville Properties Corp.*, 299 F. Supp. 3d at 135 (providing, in the civil forfeiture context, that "heirs—even actual heirs—who have a future, contingent interest in property lack standing to contest a forfeiture of that property" (citing cases)); *In re Christensen*, 561 B.R. at 228-29 (providing that "until a divorce decree is entered one spouse does not have ownership to property tilted in the other spouse" and that it is a divorce decree that "vests an ownership interest in the spouse to whom the property is awarded") (quotations, citations, and footnotes omitted)). Therefore, Mr. Philpot has failed to establish a

5

sufficient interest that would be injured by transferring to the Receiver the BMW that he does not own.

Additionally, even Mr. Philpot can meet the stricture of Article III standing, this court declines to address Mr. Philpot's claim for prudential reasons. "Generally, litigants in federal court are barred from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 643 (2d Cir. 1988). "Though this limitation is not dictated by the Article III case or controversy requirement, the third-party standing doctrine has been considered a valuable prudential limitation, self-imposed by the federal courts." *Id*. Indeed, the Supreme Court has stated that

> [f]ederal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. . . . Second, third parties themselves usually will be the best proponents of their own rights.

*Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976). "The Supreme Court has recognized that under some special circumstances these concerns are not present." *Kane*, 843 F.2d at 643. First, "where the litigant's interests are closely allied with those of the third parties, standing is permitted because the litigant is likely to be as effective a proponent of the third-party rights as the third parties themselves." *Id*. at 643-44. Second, "where third parties are unable to assert their own rights, current litigants are allowed to assert third-party claims that might otherwise remain unvindicated." *Id*. at 644. However, in the absence of those considerations, a litigant is restricted to asserting his or her own rights. *Id*.

6

Because Mrs. Philpot is the sole owner of the BMW under Utah law, it is her and only her property interests that are potentially affected by these summary proceedings and the Motion. Under the foregoing principles regarding third-party standing, Mr. Philpot is not allowed to advocate for Mrs. Philpot's rights in these proceedings based on Mr. Philpot's reasons for obtaining the BMW for Mrs. Philpot. With respect to the two exceptions noted above, neither of them applies here. There is no indication that Mrs. Philpot is unable to assert her own rights in these summary proceedings. Additionally, although Mr. Philpot's interests may be aligned with Mrs. Philpot's, the court is not persuaded that the arguments Mr. Philpot presents in his opposition would apply in any way to Mrs. Philpot. Indeed, Mr. Philpot's arguments have no relevance to Mrs. Philpot because they present reasons why Mr. Philpot, not Mrs. Philpot, should not be required to transfer ownership and possession of the BMW to the Receiver. However, as noted above, Mr. Philpot has never had any ownership interest in the BMW. As such, his arguments miss the mark.

Nevertheless, even if this court considers Mr. Philpot's proffered arguments, they fail to show that Mrs. Philpot can defeat the Motion. First, Mrs. Philpot did not obtain the BMW for "value," as that phrase is defined under Utah law. Utah Code Ann. § 25-6-104(1) ("Value is given for a transfer . . . if, in exchange for the transfer . . . , property is transferred or an antecedent debt is secured or satisfied."). The basis for Mrs. Philpot's ownership of the vehicle was not the transfer of property, and it was not a payment of an antecedent debt that Mr. Kisana or the Defendant entities owed to her, but an antecedent debt owed to Mr. Philpot, who does not and never has owned the BMW. Second, even if Mrs. Philpot did provide "value" for the BMW, she fails to show that Mr. Kisana was financially solvent, which, by itself, dooms the argument

resisting the Motion. Utah Code Ann. § 25-6-202(1)(b)(ii) (providing that a transfer is voidable if the debtor was insolvent and "made the transfer . . . without receiving reasonably equivalent value in exchange for the transfer"). Finally, none of the defenses to turning the BMW over to the Receiver that Mr. Philpot asserts applies to Mrs. Philpot (*e.g.*, Mrs. Philpot is not a "merchant" under the Utah Commercial Code). Utah Code Ann. § 25-6-304. Thus, the only person with the requisite standing to contest the Motion fails to successfully resist it. Accordingly, the Motion is granted.[10]

---

[10] Under the summary disposition procedure, Mrs. Philpot was required to send any opposition to the Motion to the Receiver within 30 days of service of the Motion. ECF No. 338 at 2. Mrs. Philpot did not send any opposition to the Receiver and has not filed any response to the Motion with the court. Given that the Motion is unopposed, that provides an additional basis for granting the Motion. DUCivR 7-1(d) ("Failure to respond timely to a motion, other than for summary judgment, may result in the court's granting the motion without further notice."). But even if the court considers Mr. Philpot's reasons to contest the Motion, the court would still grant it. Although Mr. Philpot argues that the issue of "actual intent to hinder, delay, or defraud," Utah Code Ann. § 25-6-202(1)(a), is a factual inquiry, the Receiver has cited to more than sufficient evidence in the record to establish, by a preponderance of the evidence, that actual intent exists here. *Id*. § 25-6-202(3) (providing that a claim based on actual intent to hinder, delay, or defraud any creditor must be proved by a preponderance of the evidence). Section 25-6-202(2) provides the non-exhaustive list of factors the court must consider in determining whether actual intent exists. Three of those factors are most relevant here. The first factor is whether "the transfer . . . was to an insider." *Id*. § 25-6-202(2)(a). The Receiver has cited to undisputed evidence indicating that Mr. Philpot served as Mr. Kisana's attorney and as the Defendant entities' registered agent, which provides evidence that Mr. Philpot is or was an insider. The second factor is whether "the transfer . . . was disclosed or concealed." *Id*. § 25-6-202(2)(c). Although Mr. Philpot claims it is irrelevant, he does not dispute that he and Mr. Kisana failed to promptly provide any evidence to the Receiver concerning the transfer of the BMW, which provides evidence of intent to conceal the transfer. The third and final factor is whether "the debtor was insolvent or became insolvent shortly after the transfer was made." *Id*. § 25-6-202(2)(i). Mr. Philpot does not dispute the Receiver's reports indicating that, at the time of the transfer of the BMW, Mr. Kisana owed hundreds of thousands of dollars to judgment creditors, banks, and secured creditors, and the State of Utah. That provides evidence of Mr. Kisana's insolvency at the time of the transfer. Based upon that evidence, even if Mr. Philpot had standing here, the court would conclude that "actual intent to hinder, delay, or defraud" exists here and, therefore, that the transfer of the BMW is voidable. *Id*. § 25-6-202(1)(a).

## CONCLUSION AND ORDER

Based upon the foregoing, IT IS HEREBY ORDERED:

1. The Motion[11] is GRANTED.

2. Mrs. Philpot shall transfer ownership and possession of the BMW to the Receiver within 14 days of the date of this Memorandum Decision and Order.

IT IS SO ORDERED.

DATED February 18, 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[11] ECF No. 240.