## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **AAAG-CALIFORNIA, LLC,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:20-cv-00026-HCN-JCB** |
| **ABDUL R. KISANA, et al.,** | **District Judge Howard C. Nielson, Jr.** |
| **Defendants.** | **Magistrate Judge Jared C. Bennett** |

District Judge Howard C. Nielson, Jr. referred this case to Magistrate Judge Paul M. Warner under 28 U.S.C. § 636(b)(1)(A).[1]  Due to Judge Warner's retirement, this case was referred to Magistrate Judge Jared C. Bennett.[2]  Before the court are: (1) Plaintiff AAAG-California, LLC's ("AAAG") Motion for Terminating Sanctions as to Defendants Abdul R. Kisana ("Mr. Kisana"), Specialized Sales and Leasing, LLC ("SSL"), and Luxury Auto Group, LLC ("LAC") (collectively, "Kisana Defendants");[3] and (2) the Kisana Defendants' Motion to Enter Final Judgment Against the Kisana Defendants.[4]  Judge Nielson referred both motions to Judge Bennett under 28 U.S.C. § 636(b)(1)(B).[5]  The court has carefully reviewed the parties'

---

[1] ECF No. 70.

[2] ECF No. 215.

[3] ECF No. 522.

[4] ECF No. 548.

[5] ECF Nos. 523, 549.

written memoranda on those motions.  Under DUCivR 7-1(f), the court concludes that oral

argument is not necessary and, therefore, decides the motions on the written memoranda.  Based

upon the analysis set forth below, the court recommends: (1) granting AAAG's motion for

terminating sanctions, entering default judgment against the Kisana Defendants on all relevant

claims in AAAG's operative complaint, and dismissing with prejudice all of the Kisana

Defendants' counterclaims against AAAG; (2) awarding AAAG its reasonable expenses,

including attorney fees, incurred in connection with litigating this action against the Kisana

Defendants, (3) denying the Kisana Defendants' motion to enter final judgment, and (4) referring

this matter to the United States Attorney's Office for the District of Utah for investigation and

possible criminal prosecution.

## **BACKGROUND**

Mr. Kisana's misdeeds precipitated this lawsuit and have continued unabated throughout

its unnaturally prolonged life.  AAAG operates an automobile auction located in California.  Mr.

Kisana is or was the operator of two Utah-based automobile dealerships, SSL and LAC.

According to AAAG's various complaints filed in this action, AAAG generally alleges that it

sent more than 40 vehicles with an approximate value of $2 million ("Vehicles") to the Kisana

Defendants without advance payment.  AAAG asserts that it retained the Vehicles' titles to

ensure that the Kisana Defendants paid for the Vehicles.  AAAG contends that the Kisana

Defendants subsequently arranged for an employee of AAAG to obtain the Vehicles' titles and

send them to the Kisana Defendants, even though the Kisana Defendants had not paid AAAG for

the Vehicles.  The Kisana Defendants admitted early on to taking the Vehicles,[6] which amounts

to stealing them.  AAAG maintains that, after stealing the vehicles, the Kisana Defendants

subsequently sold nearly all of them to third parties.

AAAG filed its initial complaint in this action, which alleged claims against the Kisana

Defendants and one other defendant.[7]  On the same date, AAAG moved for a temporary

restraining order and appointment of a receiver.[8]  AAAG then moved for a preliminary

injunction on January 22, 2020.[9]

On January 23, 2020, Judge Nielson entered a temporary restraining order that enjoined

the Kisana Defendants from transferring, selling, or in any way disposing of any and all assets,

capital, tangible property, and documentation in their possession, custody, or control.[10]  Judge

Nielson further ordered that he would appoint a receiver to take immediate control over any all

such assets, tangible property, and documentation to ensure that none of AAAG's assets,

documentation concerning those assets, or any proceeds from the sale or transfer of any of those

assets were dissipated before the receiver could perform an accounting.

Judge Nielson then entered a preliminary injunction on February 16, 2020, which

enjoined the Kisana Defendants from selling, transferring, or in any way disposing of any of the

---

[6] ECF No. 45.

[7] ECF No. 2.

[8] ECF No. 4.

[9] ECF No. 27.

[10] ECF No. 29-30.

Vehicles.[11]  The preliminary injunction also enjoined the Kisana Defendants from transferring or disposing of any documentation, communications, or other evidence concerning the Vehicles.

On February 17, 2020, Judge Nielson entered a receivership order ("Receivership Order") appointing a receiver, Jonathan O. Hafen ("Receiver").[12]  The Receivership Order required the Kisana Defendants to, *inter alia*, cooperate with and assist the Receiver, as well as preserve and turn over to the Receiver all paper and electronic information relating to any of their assets, capital, and tangible property, including the Vehicles.

On February 21, 2020, the Receiver filed a motion for the Kisana Defendants to show cause why they should not be held in civil contempt for violating the Receivership Order.[13]  The Receiver contended that despite multiple attempts to recover various records and information from the Kisana Defendants, they had refused to comply with the Receiver's requests and disregarded the applicable deadlines for production set forth in the Receivership Order.  On February 28, 2020, the Receiver filed a supplemental motion for the Kisana Defendants to show cause why they should not be held in civil contempt for violating the Receivership Order.[14]  In that supplemental motion, the Receiver outlined the Kisana Defendants' additional and continued violations of the Receivership Order.  The Receiver asserted that he knew that the information

---

[11] ECF No. 61.

[12] ECF No. 62.

[13] ECF No. 73.

[14] ECF No. 94.

the Kisana Defendants had provided was deficient because it did not contain certain information the Receiver had already discovered, including additional assets, creditors, agents, and vehicles.

Judge Nielson scheduled a hearing on the Receiver's motions for March 10, 2020,[15] and ordered Mr. Kisana to appear at the hearing.[16] After Mr. Kisana failed to appear at the hearing, Judge Nielson entered the first order of contempt against the Kisana Defendants on March 12, 2020.[17] Judge Nielson concluded that the Kisana Defendants had failed to comply with the Receivership Order despite having knowledge of it. Among other things, Judge Nielson also set a March 19, 2020 hearing, ordered Mr. Kisana to appear at that telephonic hearing, and ordered the Kisana Defendants to fully comply with their production obligations under the Receivership Order by March 30, 2020. Judge Nielson warned the Kisana Defendants that their failure to comply with the March 30, 2020 deadline would result in a bench warrant being issued for Mr. Kisana's arrest.

Although Mr. Kisana appeared at the March 19, 2020 telephonic hearing,[18] Judge Nielson subsequently issued an order on March 23, 2020 requiring the Kisana Defendants to make certain required production to the Receiver on or before March 26, 2020.[19] In lieu of production, Judge Nielson required "Mr. Kisana to sign a sworn statement that he has provided all responsive documents in his possession or to which he has access and that he has not concealed or destroyed

---

[15] ECF No. 98.

[16] ECF No. 99.

[17] ECF No. 105.

[18] ECF No. 135.

[19] ECF No. 123.

any responsive documents."[20]  Judge Nielson concluded "that requiring such a statement is

warranted in light of Mr. Kisana's behavior throughout this case, including his attempts to avoid

service . . . and his defiance of this court's order to appear in person at the contempt hearing on

March 10, 2020."[21]  Judge Nielson also ordered the Kisana Defendants to pay a coercive fine of

$1,000 per day for failure to produce documents and ordered that a bench warrant would issue

for Mr. Kisana's arrest if he did not fully comply with his obligations under the Receivership

Order by April 2, 2020.

        The Receiver filed a notice of non-compliance on March 27, 2020 indicating he did not

receive any additional statements, documents, or information from the Kisana Defendants by the

March 26, 2020 deadline.[22]  The Receiver filed a second notice of non-compliance on April 6,

2020 stating that although the Kisana Defendants had filed a renewed objection to the

Receivership Order, they still had not complied with their obligations under the Receivership

Order and Judge Nielson's March 23, 2020 order.[23]  On April 13, 2020, the Receiver and the

Kisana Defendants filed a joint status report with the court indicating that the Kisana Defendants'

counsel had discovered that Mr. Kisana had left the United States soon after Judge Nielson

issued his March 23, 2020 order.[24]

---

[20] *Id*. at 6.

[21] *Id*.

[22] ECF No. 125.

[23] ECF No. 134.

[24] ECF No. 140.

On April 15, 2020, Judge Nielson entered a second contempt order against Mr. Kisana.[25] On the same date, Judge Nielson issued a bench warrant for Mr. Kisana's arrest[26] "[b]ecause Mr. Kisana has disregarded this court's order finding him in contempt, persisted in refusal to comply with [certain provisions] of the Receivership Order, and failed to assert privilege or inability to comply with respect to these provisions despite multiple opportunities to do so."[27]

On June 29, 2020, the Receiver filed an affidavit of non-compliance concerning Mr. Kisana's failure to comply with the Receivership Order.[28]  In that affidavit, the Receiver detailed Mr. Kisana's failure to respond to requests for information and to turn over certain records concerning the Kisana Defendants, including title records for certain of the Vehicles, records from business and personal email accounts, cell phone records, computer files, accounting records, and inventory lists.  The Receiver requested an order requiring Mr. Kisana to comply with its requests.  At a July 15, 2020 hearing, Judge Nielson declined to rule on that affidavit, but directed the Receiver to file a motion to compel Mr. Kisana to comply with the Receivership Order if he did not "promptly provide the requested answers and materials."[29]

On August 17, 2020, the Receiver moved to compel Mr. Kisana to comply with the Receivership Order.[30]  The Receiver reiterated Mr. Kisana's failures to comply with his

---

[25] ECF No. 142.

[26] ECF No. 144.  Judge Nielson later recalled Mr. Kisana's bench warrant.  ECF No. 162.

[27] ECF No. 142 at 2.

[28] ECF No. 246.

[29] ECF No. 267.

[30] ECF No. 295.

obligations under the Receivership Order noted above and requested an order requiring Mr. Kisana to comply with those obligations.  After Mr. Kisana failed to file a timely response to the Receiver's motion, the court granted the motion on September 10, 2020 and ordered Mr. Kisana to within 3 days answer certain information requests put to him by the Receiver and turn over all records and documents as required under the Receivership Order.[31]  The court warned Mr. Kisana that further action could be taken if he failed to comply, including authorizing a writ of possession over Mr. Kisana's electronic devices, ordering Mr. Kisana to provide access to the Receiver for any such devices, and requiring Mr. Kisana to show cause why he should not be held in contempt for violating the Receivership Order.

After Mr. Kisana yet again failed to fully comply with the court's September 10, 2020 order, the Receiver filed a notice of non-compliance on September 18, 2020.[32]  The Receiver requested that the court authorize a writ of possession over Mr. Kisana's electronic devices, require Mr. Kisana to provide the Receiver with access to any such devices for forensic examination and copying, require Mr. Kisana to provide the Receiver with access to any of Mr. Kisana's email accounts, and order Mr. Kisana to show cause why he should not be held in contempt for violating the court's September 10, 2020 order and the Receivership Order.  In a September 23, 2020 order to show cause, the court provisionally granted the Receiver's requested relief and ordered Mr. Kisana to show cause why the Receiver's specific requests for

---

[31] ECF No. 334.

[32] ECF No. 339.

relief should not be granted and why the court should not hold Mr. Kisana in contempt.[33]  The court set a show-cause hearing for September 29, 2020, required Mr. Kisana to appear at that hearing, and warned Mr. Kisana that his failure to appear could result in further proceedings, including, but not limited to, a warrant for his arrest.

Mr. Kisana appeared for the online show-cause hearing.[34]  However, when the court ordered him several times to disclose his current location for purposes of allowing the Receiver to obtain his cell phone for forensic examination and copying, Mr. Kisana refused to answer.[35] Therefore, the court held him in contempt a third time based upon his failure to obey the court's order.  As a sanction, the court issued a warrant for Mr. Kisana's arrest[36] along with an order for 48 hours of imprisonment upon his arrest.  The court further ordered, *inter alia*, that: (1) if Mr. Kisana disclosed his location to the Receiver by October 7, 2020, the court would recall the bench warrant and suspend the term of imprisonment; (2) within 2 hours of the conclusion of the show-cause hearing, Mr. Kisana was required to turn over to the Receiver all relevant credentials and login information for any of his personal or business email accounts, including cloud-based accounts; and (3) by October 7, 2020, Mr. Kisana was required to provide his cell phone to the Receiver for forensic examination and copying.  The court also imposed discovery sanctions against Mr. Kisana in the form of monetary sanctions payable to the court and an award to the

---

[33] ECF No. 343.

[34] ECF No. 354.

[35] ECF No. 353.

[36] ECF No. 356.

Receiver of his reasonable expenses, including attorney fees, incurred in connection with the Receiver's August 17, 2020 motion, his September 18, 2020 notice, and the show-cause hearing. Finally, in a written order following the hearing, the court noted that if Mr. Kisana failed to comply with the aforementioned requirements, a motion could be filed for additional sanctions, including striking all of his defenses and entering default judgment against him. Despite the sanctions, the Receiver filed a notice of non-compliance on October 8, 2020 indicating that Mr. Kisana had failed to comply with any of the court's orders.[37]

On November 9, 2020, the Receiver filed a status report indicating that Mr. Kisana had concealed documents and information and provided false testimony in violation of the Receivership Order.[38] Specifically, the Receiver noted that Mr. Kisana had provided multiple sworn statements to the Receiver indicating that Mr. Kisana had provided all relevant documents and information to the Receiver and had not concealed or destroyed any documents or information. At the same time, the Receiver provided compelling evidence demonstrating that in late January 2020—after entry of the first temporary restraining order and contrary to Mr. Kisana's sworn statements—Mr. Kisana arranged for the transfer of many of the Kisana Defendants' documents, records, and computer equipment to a storage unit. The Receiver further noted that it had obtained access to the storage unit and recovered tens of thousands of the Kisana Defendants' records, including records directly related to the Vehicles. However, according to the Receiver, the majority of records related to the Kisana Defendants' vehicle

---

[37] ECF No. 361.

[38] ECF No. 406.

transfers from 2019, including those directly related to the Vehicles, are missing.  As such, the

Receiver contended that, contrary to Mr. Kisana's sworn statements, he had knowledge of,

concealed, and likely destroyed the Kisana Defendants' records and information related to the

Vehicles, which was a clear violation of the Receivership Order and demonstrated that he had

provided false testimony to the Receiver.  Based upon those facts, the Receiver indicated that he

believed that Mr. Kisana's actions warranted severe and serious sanctions, including additional

contempt, adverse inferences, striking certain defenses, an award of attorney fees, and possibly

terminating sanctions.  The Receiver further indicated his belief that this matter should be

referred to the United States Attorney's Office for potential prosecution for criminal contempt

and perjury.

Also on November 9, 2020, the Receiver filed yet another motion to compel Mr. Kisana's

compliance with the Receivership Order.[39]  In that motion, the Receiver indicated that Mr.

Kisana had refused to answer the Receiver's questions regarding the status and location of SSL's

computer equipment.  The Receiver asserted that Mr. Kisana's refusal to do so was a clear

violation of the terms of the Receivership Order and demonstrated Mr. Kisana's intent to hinder

the Receiver's investigation.  The Receiver requested a court order requiring Mr. Kisana to

answer the Receiver's questions concerning SSL's computer equipment within 3 days or be

subject to monetary sanctions.  Although a bench warrant had already been issued for Mr.

Kisana's arrest, the Receiver again requested that a bench warrant issue if Mr. Kisana failed to

comply.

---

[39] ECF No. 407.

After Mr. Kisana failed to file a timely response to the motion, the court granted the Receiver's motion in a December 23, 2020 order.[40]  The court ordered Mr. Kisana to answer the Receiver's questions concerning SSL's computer equipment within 3 days.  The court further directed the Receiver to notify the court if Mr. Kisana failed to comply and indicated that it may take additional action based upon any such failure.  Finally, the court indicated that it would not impose additional monetary sanctions against Mr. Kisana if he failed to comply but would instead consider striking Mr. Kisana's answer.

On February 4, 2021, the Receiver filed a report indicating that he had discovered two financial accounts that Mr. Kisana had failed to disclose to the Receiver, which was a violation of the Receivership Order.[41]  The Receiver asserted that Mr. Kisana's failure to disclose the financial accounts kept viable assets from the Receiver and that a review of the financial accounts showed that Mr. Kisana had been spending viable receivership assets.  The Receiver further indicated that Mr. Kisana had provided contradictory sworn statements to the Receiver concerning Mr. Kisana's knowledge of the existence of the Kisana Defendants' business records and computer equipment.  Specifically, the Receiver noted that Mr. Kisana had provided a sworn statement in September 2020 indicating that he knew of no person with any documents or business records related to any of the Kisana Defendants, yet in December 2020, Mr. Kisana asserted that SSL's computer equipment was in the possession of a former SSL employee. Finally, the Receiver reiterated his beliefs from his prior status report that Mr. Kisana's conduct

---

[40] ECF No. 478.

[41] ECF No. 497.

12

warranted severe sanctions in this action, as well as a referral to the United States Attorney's Office for potential prosecution for criminal contempt and perjury.

In a February 24, 2021 quarterly status report, the Receiver noted that Mr. Kisana is currently in criminal contempt, has submitted false testimony to the Receiver, concealed and/or destroyed the Kisana Defendants' records, violated the asset freeze imposed by the Receivership Order, ignored the Receiver's requests for information, and fled the United States.[42]  Relying upon the foregoing history in this action, AAAG filed its motion for terminating sanctions against the Kisana Defendants on March 9, 2021.[43]  AAAG requests that the court enter default judgment against the Kisana Defendants on all relevant claims in AAAG's operative complaint, dismiss with prejudice all of the Kisana Defendants' counterclaims against AAAG, and award AAAG its reasonable expenses, including attorney fees, incurred in connection with litigating this action against the Kisana Defendants.

On March 25, 2021, AAAG filed a motion for leave to file a supplemental memorandum in support if its motion.[44]  The court granted that motion on March 26, 2021 and ordered AAAG to file its supplemental memorandum on or before March 29, 2021.[45]  In its supplemental memorandum, AAAG indicates that the Kisana Defendants took the deposition of a former

---

[42] ECF No. 509.

[43] ECF No. 522.

[44] ECF No. 533.

[45] ECF No. 537.  The court further provided the Kisana Defendants with the opportunity to file a response to AAAG's supplemental memorandum.  The Kisana Defendants did not file any response.

AAAG employee on March 15, 2021.  As demonstrated by the deposition transcript submitted

with AAAG supplemental memorandum, the former AAAG employee testified during her

deposition that Mr. Kisana had attempted on two occasions to coerce her to provide favorable,

yet untrue, testimony for use against AAAG in this action.  The AAAG employee testified that

Mr. Kisana first offered to pay her in exchange for that testimony and, when she refused that

offer, Mr. Kisana threatened to report her for notary fraud.  The employee further testified that

Mr. Kisana contacted her on each occasion using a different cell phone number and, according to

AAAG, Mr. Kisana has not turned over the records for those cell phones despite numerous court

orders requiring him to do so.  AAAG argues that Mr. Kisana's conduct constitutes not only

witness tampering under both Utah law and federal law but also further evidence of Mr. Kisana's

disregard for multiple court orders and the ineffectiveness of anything short of terminating

sanctions.

Although the Kisana Defendants originally opposed AAAG's motion on March 26,

2021,[46] they later filed their motion for entry of judgment on May 5, 2021.[47]  In their motion, the

Kisana Defendants request that judgment be entered against them, but they provide certain

conditions for any such judgment.  Specifically, they contend that the judgment should be

entered only for the full amount of the Vehicles and only on AAAG's breach of contract claim,

which is what they offered at the very beginning of this litigation.  The Kisana Defendants

further assert that the value of the Vehicles is disputed and, therefore, briefing or an evidentiary

---

[46] ECF No. 540.

[47] ECF No. 548.

hearing is required to determine the amount of the judgment.  The Kisana Defendants further request that AAAG's request for an award of reasonable expenses be denied, their counterclaims be dismissed with prejudice, AAAG be entitled to withdraw its bond, and the bench warrant for Mr. Kisana be withdrawn.  Finally, the Kisana Defendants contend that, if their motion is granted and judgment is entered, it will eliminate the need for the preliminary injunction and the Receivership Order.  Mr. Kisana's abject mockery of the civil justice system needs to end now.

## **LEGAL STANDARDS**

The following legal standards apply to AAAG's motion for terminating sanctions against the Kisana Defendants.  Fed. R. Civ. P. 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders."[48]  Fed. R. Civ. P. 37(b)(2)(A)(v)-(vi) also provides that the "further just orders" a court may issue in the event of such a failure include "dismissing the action or proceeding in whole or in part" and "rendering a default judgment against the disobedient party."  Additionally, Fed. R. Civ. P. 37(b)(2)(C) provides that in the event of such a failure, "[i]nstead of or in addition to" those orders, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

---

[48] Where, as here, an injunctive order enjoins a party from concealing or destroying evidence, the party's violation of that order subjects the party to possible Rule 37(b) sanctions.  *See, e.g.*, *WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209, at *10 (N.D. Cal. Apr. 24, 2020) (concluding that when a "preliminary injunction forbade the enjoined parties from '[d]estroying, concealing, disposing, deleting, removing or altering any and all documentation of any kind,'" it constituted "an 'order to provide or permit discovery' under Rule 37(b)" (alteration in original)); *Ins. Recovery Grp., Inc. v. Connolly*, 95 F. Supp. 3d 73, 78-79 (D. Mass. 2015) (indicating that violation of a temporary restraining order warranted Rule 37(b) sanctions).

"[C]ourts have broad inherent power to sanction misconduct and abuse of the judicial process, which includes the power to enter a default judgment."[49]  "Default judgment is a harsh sanction that should be used only if the failure to comply with court orders is the result of willfulness, bad faith, or any fault of the disobedient party rather than inability to comply."[50]  Additionally, Tenth Circuit "case law makes it clear that a district judge may dismiss an action for discovery violations."[51]  Like default judgment, "dismissal represents an extreme sanction appropriate only in cases of willful misconduct."[52]

To determine whether entry of default judgment or dismissal is an appropriate sanction for failure to comply with a discovery order, the court applies the following factors: (1) the degree of actual prejudice to the non-offending party, (2) the amount of interference with the judicial process, (3) the culpability of the disobedient party, (4) whether the court warned the disobedient party in advance that the sanction would be a likely result for noncompliance, and (5) the efficacy of lesser sanctions.[53]  Those factors apply with equal weight to the court's consideration of the sanctions of default judgment and dismissal.[54]

---

[49] *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015) (quotations and citations omitted).

[50] *Id.* at 1147-48 (quotations and citation omitted).

[51] *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995).

[52] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

[53] *Id.* at 921.

[54] *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159-60 (10th Cir. 2013) (applying factors in considering whether the sanction of default judgment was appropriate); *Ehrenhaus*, 965 F.2d at 920-21 (applying factors in determining whether the sanction of dismissal was appropriate).

## ANALYSIS

Based upon the following analysis, the court recommends: (I) granting AAAG's motion for terminating sanctions, entering default judgment against the Kisana Defendants on all relevant claims in AAAG's operative complaint, and dismissing with prejudice all of the Kisana Defendants' counterclaims against AAAG; (II) awarding AAAG its reasonable expenses, including attorney fees, incurred in connection with litigating this action against the Kisana Defendants; (III) denying the Kisana Defendants' motion to enter final judgment; and (IV) referring this matter to the United States Attorney's Office for the District of Utah for investigation and possible criminal prosecution.  The court addresses each recommendation in turn below.

### I.      AAAG's Motion for Terminating Sanctions

The litigation mockery in which Mr. Kisana has engaged needs to end now.  As stated above, the court must consider certain factors to determine whether the sanctions of default judgment and dismissal should be imposed upon the Kisana Defendants.  Based upon the analysis set forth below, the court concludes: (A) the Kisana Defendants' conduct has imposed a high degree of prejudice upon AAAG; (B) the Kisana Defendants' actions have substantially interfered with the judicial process; (C) the Kisana Defendants are culpable for their misconduct; (D) the Kisana Defendants have been given multiple advance warnings that terminating sanctions were a likely result of their conduct; and (E) any sanction other than terminating sanctions would not be effective.  Therefore, the court recommends granting AAAG's motion for terminating sanctions, entering default judgment against the Kisana Defendants on all relevant

claims in AAAG's operative complaint, and dismissing with prejudice all the Kisana Defendants' counterclaims against AAAG.

>    **A.    The Kisana Defendants' Conduct Has Imposed a High Degree of Prejudice Upon AAAG.**

The Kisana Defendants have twice victimized AAAG: first by stealing the Vehicles and, second, by engaging in nefarious litigation tactics.  However, for purposes of this motion, only the Kisana Defendants' second transgression is relevant.  The Kisana Defendants' obstructionist approach to the discovery process in this action has substantially prejudiced AAAG for three reasons.  First, the extensive history recited above clearly demonstrates that the Kisana Defendants have concealed a great deal of evidence in this action.  Indeed, the Kisana Defendants have refused to provide full responses to many of the Receiver's requests and failed to comply with discovery orders directing them to provide evidence and information to the Receiver.  Further, the Receiver has come forward with compelling evidence indicating that Mr. Kisana physically moved evidence to conceal it despite court orders prohibiting him from doing so.  The Kisana Defendants' concealment of evidence alone constitutes prejudicial conduct because "[t]he withholding of evidence 'substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation.'"[55]  The Kisana Defendants have also attempted to tamper with witnesses.  Suborning or attempting to suborn perjury is clearly prejudicial to AAAG to say nothing of the justice system as a whole.

---

[55] *Freddie v. Marten Transp., Ltd.*, 428 F. App'x 801, 804 (10th Cir. 2011) (quoting *Garcia v. Berkshire Life Ins. Co. Of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009)).

Second, the Kisana Defendants' actions have significantly hindered the resolution of the claims in this case, which provides yet another basis for a finding of prejudice to AAAG.[56] Indeed, this case has been pending since January 2020, and discovery is still not complete, due in large part to the Kisana Defendants' conduct. Furthermore, the Kisana Defendants' actions have prevented the Receiver from fully executing his duties, even though the Receivership Order has been in place since February 2020.

Finally, the Kisana Defendants' conduct has required AAAG and the Receiver to expend significant resources on attorney fees and costs, thereby imposing additional prejudice.[57] As shown above, the Receiver has been forced to bring discovery issues related to the Kisana Defendants before the court on numerous occasions, and AAAG was ultimately required to file its motion for terminating sanctions because of the Kisana Defendants' actions. The Kisana Defendants' second victimization of AAAG needs to end.

**B.    The Kisana Defendants' Actions Have Substantially Interfered with the Judicial Process.**

The Kisana Defendants' conduct has substantially interfered with the judicial process in this action. As demonstrated above, the Kisana Defendants have repeatedly failed to provide responses to discovery requests and refused to comply with discovery orders. Those reasons, by

---

[56] *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1321 (D. Utah 2016) (finding prejudice where the offending party's conduct caused "substantial delays in the final resolution of the substantive claims").

[57] *QSG, Inc. v. Schlittler*, No. 2:11-CV-871-TC, 2014 WL 5742656, at *4 (D. Utah Nov. 5, 2014) (finding prejudice where a party "incurred otherwise unnecessary" attorney fees "in its attempt to move the case forward," including having to file a motion to compel and two motions for Rule 37 sanctions).

themselves, provide sufficient bases to support a determination that the Kisana Defendants

significantly interfered with the judicial process.[58]  Furthermore, the Kisana Defendants' failure

to comply with basic discovery obligations and numerous court orders has required unnecessary

motion practice, which in turn has wasted court time and resources.[59]

### C.     The Kisana Defendants Are Culpable for Their Misconduct.

The Kisana Defendants, and specifically Mr. Kisana, are culpable for their failures to

comply with multiple discovery orders.  The court acknowledges that it may not impose the

sanction of default judgment or dismissal without a showing that Mr. Kisana acted willfully.[60]

Although willfulness cannot be shown where there is an inability of the party to comply with a

---

[58] *Taylor v. Dist. of Colo. Safeway, Inc.*, 116 F. App'x 976, 978 (10th Cir. 2004) (concluding that "[t]he defendant was obviously and substantially prejudiced" and noting that "[t]he judicial process essentially ground to a halt when [the plaintiff] refused to respond to either the defendant's requests or the district court's orders"); *Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993) (affirming district court's finding of substantial interference with the judicial process where the offending parties "repeatedly ignored court orders and thereby hindered the court's management of its docket and its efforts to avoid unnecessary burdens on the court and the opposing party"); *Celtig v. Patey*, No. 217CV01086JNPEJF, 2019 WL 4563887, at *6 (D. Utah Aug. 19, 2019) ("A party interferes with the judicial process when it fails to abide by discovery orders."), *report and recommendation adopted sub nom. Celtig, LLC v. Patey*, No. 2:17-CV-01086, 2019 WL 4563648 (D. Utah Sept. 19, 2019).

[59] *Farani v. Express Recovery Servs., Inc.*, No. 2:10-CV-331-DB-PMW, 2011 WL 6956598, at *4 (D. Utah Oct. 21, 2011) (finding "a high degree of interference with the judicial process" where the plaintiff's conduct required unnecessary motion practice and hearings and, consequently, "a waste of the court's time and resources"), *report and recommendation adopted*, No. 2:10-CV-331, 2012 WL 32559 (D. Utah Jan. 5, 2012)

[60] *Klein*, 777 F.3d at 1147-48; *Ehrenhaus*, 965 F.2d at 920.

court order,[61] wrongful intent need not be shown; instead, a willful failure is "any intentional failure as distinguished from involuntary noncompliance."[62]

Importantly, there is no evidence that Mr. Kisana had an inability to comply with the discovery orders or that his failures to comply were the result of involuntary noncompliance. To the contrary, as shown above, Mr. Kisana has been held in both criminal and civil contempt and had warrants issued for his arrest based upon his failures to appear at a hearing despite having knowledge of it, answer simple and direct questions from the court, and comply with discovery orders. In fact, Mr. Kisana has willfully engaged in activities such as moving and failing to disclose documents that he was required to produce, attempting to suborn perjury, and fleeing the country to avoid his responsibilities. The Kisana Defendants have provided nothing to contradict the evidence of their malfeasance. Under such circumstances, the court concludes that the Kisana Defendants are clearly culpable for their misconduct.

**D.    The Kisana Defendants Have Been Given Multiple Advance Warnings That Terminating Sanctions Were a Likely Result of Their Misconduct.**

The Kisana Defendants have been warned multiple times that terminating sanctions could result from their continued misconduct, but they carry on with the same litigative gamesmanship that wastes party and court resources. First, in a September 30, 2020 order, the court specifically warned Mr. Kisana that his failure to comply with the order could result in a motion for additional sanctions, including striking all his defenses and entering default judgment against

---

[61] *In re Standard Metals Corp.*, 817 F.2d 625, 628 (10th Cir. 1987) ("The courts that have concluded that the failure to comply with a discovery order was not willful have emphasized the inability of the party to comply with the order.").

[62] *Id*. at 628-29 (quotations and citations omitted).

him.[63]  Mr. Kisana was warned a second time in a December 23, 2020 order that if he failed to comply with that order, the court would consider striking his answer.[64]  Sprinkled between these clear and ominous warnings, the court held Mr. Kisana in contempt multiple times.  Mr. Kisana has taken advantage of the court, AAAG, and the Receiver's patience by repeatedly receiving yet ignoring all these warnings.  It is high time for these warnings to mean something.

 **E. Any Sanction Other Than Terminating Sanctions Would Not Be Effective.**

 Finally, the court considers whether lesser sanctions than terminating sanctions would be effective.  In considering that issue, the court must determine "[(1)] whether the lesser sanction would remedy the harm to the [nonoffending party] and the judicial process, [(2)] whether it would deter future misconduct by [the disobedient party] and future litigants, and [(3)] whether it would appropriately punish [the disobedient party]."[65]  Each consideration is addressed summarily in order below and demonstrates that lesser sanctions have not been and will not be effective here.

 First, lesser sanctions would not remedy the harm to AAAG and the judicial process.  As indicated above, there is significant evidence indicating that the Kisana Defendants have concealed and perhaps destroyed critical documents and information.  Further, the Kisana Defendants continue to refuse to produce any such concealed documents and information, despite numerous court orders to do so.  Imposing any lesser sanction than terminating sanctions

---

[63] ECF No. 353.

[64] ECF No. 478.

[65] *Xyngular Corp.*, 200 F. Supp. at 1323.

would not remedy the harm to AAAG in being able to effectively litigate this case without that information, nor would it remedy the harm that the Kisana Defendants have inflicted on the judicial process.

Second, lesser sanctions have not and will not deter future misconduct by the Kisana Defendants. The court has already imposed numerous types of sanctions upon Mr. Kisana to remedy past misconduct and deter future misconduct. But Mr. Kisana continues to refuse to comply with discovery orders and continues to engage in misconduct. Lesser sanctions have not deterred the Kisana Defendants from abusing the litigation process and opposing parties.

Finally, lesser sanctions would not appropriately punish the Kisana Defendants. Up to this point, the imposition of monetary sanctions, the issuance of warrants for Mr. Kisana's arrest, the threat of imprisonment, and the threat of terminating sanctions have done nothing to force the Kisana Defendants to remedy past misconduct or deter future misconduct. Therefore, the court concludes that nothing short of terminating sanctions would appropriately punish the Kisana Defendants. Given that all of the foregoing factors weigh heavily in favor of imposing terminating sanctions upon the Kisana Defendants, the court recommends granting AAAG's motion for terminating sanctions, entering default judgment against the Kisana Defendants on all relevant claims in AAAG's operative complaint, and dismissing with prejudice all of the Kisana Defendants' counterclaims against AAAG.[66]

---

[66] If Judge Neilson adopts the court's recommendation to enter default judgment in favor of AAAG and against the Kisana Defendants, AAAG should be required file a motion requesting entry of judgment in an amount certain. After full briefing on any such motion, the court should then determine the amount of the judgment. Fed. R. Civ. P. 55(b)(2)(B) (providing that "[t]he court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages").

## II.     Reasonable Expenses

Mr. Kisana needs to pay for his gross misconduct.  Rule 37(b)(2)(C) provides that in the event of a failure to obey an order to provide or permit discovery, "[i]nstead of *or in addition to*" the "further just orders" a court may issue, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."[67]  Neither of the exceptions to this rule apply here.  First, the Kisana Defendants' malfeasance is not substantially justified because "it has [no] reasonable basis in both law and fact."[68]  Indeed, the Kisana Defendants flouted the court's authority by failing to comply with numerous discovery orders without any legally or factually justifiable reasons for doing so.

Second, other circumstances would not make an award of reasonable expenses unjust.  To the contrary, given the egregiousness of the Kisana Defendants' conduct described above, failing to award fees to AAAG would be unjust.  Therefore, the court recommends granting AAAG's

---

[67] (Emphasis added).

[68] *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).  Where, as here, Rule 37(b)(2)(C) employs the same term of art as the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ("EAJA"), for the same purpose of awarding costs and attorney fees, the court borrows from EAJA jurisprudence to determine substantial justification.  *Lawson v. FMR LLC*, 571 U.S. 429, 459 (2014) ("[P]arallel text and purposes counsel in favor of interpreting . . . provisions consistently."); *Northcross v. Bd. of Educ. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) (per curiam) (stating that when two provisions of different statutes share similar language, that is a "strong indication" they are to be interpreted consistently); *Morissette v. United States*, 342 U.S. 246, 263 (1952) (explaining that "where Congress borrows terms of art," it also borrows their meaning).

request for an award of reasonable expenses, including attorney fees, incurred in connection with litigating this action against the Kisana Defendants.[69]

## III.     The Kisana Defendants' Motion to Enter Final Judgment

Given the foregoing analysis of AAAG's motion for terminating sanctions, the court necessarily concludes that the Kisana Defendants' motion to enter final judgment should be denied.  For all the reasons set forth above, the terms of the Kisana Defendants' requested judgment would not sufficiently remedy the harm they have inflicted upon AAAG and the judicial process, deter future misconduct by future litigants, or appropriately punish them. Instead, this latest trick of litigative prestidigitation is nothing but another attempt to abuse the litigation process by requiring AAAG and the Receiver to rack up an enormous amount of expenses pursuing the cars that Mr. Kisana stole, cheating during the litigation process, and then having the hutzpah to demand protection from the very legal system that he has repeatedly defiled by now demanding judgment on *his* terms.  Accordingly, the court recommends denying the Kisana Defendants' motion for entry of judgment, which is wholly inadequate to remedy the harms that the Kisana Defendants have inflicted upon AAAG both before and during litigation.

## IV.     Referral to the United States Attorney's Office for the District of Utah

The court is troubled by the nature of Mr. Kisana's conduct described above.  Indeed, "'[i]f a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the

---

[69] If Judge Neilson adopts the court's recommendation to enter default judgment in favor of AAAG and against the Kisana Defendants, AAAG should be permitted to include these reasonable expenses in its motion requesting entry of judgment in an amount certain.

Constitution now fittingly calls the "judicial power of the United States" would be a mere mockery.'"[70]  That is precisely what has happened in this action.  Mr. Kisana took approximately 40 vehicles from AAAG without paying for them, and that theft occurred through interstate commerce, which may indicate a violation of the Dyer Act.[71]  Mr. Kisana used wires and the mails to engage in the transfer of the Vehicle's titles to him, which allowed him to be the purported owner for purposes of selling the Vehicles.  This may indicate mail and/or wire fraud.[72] Additionally, Mr. Kisana has attempted to stimy this litigation by, among other things, attempting to suborn perjury of at least one key witness, which may constitute tampering with a witness.[73]  This court has also held him in criminal contempt, and he has made false statements and certifications to this court, which may be a violation of 18 U.S.C. §1001.  Mr. Kisana's actions, only some of which are cited herein, provide more than enough reason for the court to exercise its authority to refer him to the United States Attorney's Office for the District of Utah for investigation of any potential criminal offense the Executive Branch sees fit to investigate.[74]

---

[70] *S.E.C. v. Bliss*, No. 2:15-CV-00098-RJS, 2015 WL 4877332, at *10 (D. Utah Aug. 14, 2015) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911)).

[71] 18 U.S.C. §§ 2312 to 2313.

[72] 18 U.S.C. §§ 1342 to 1343.

[73] 18 U.S.C. § 1512.

[74] *Bliss*, 2015 WL 4877332, at *1, 10 (referring the matter to the United States Attorney's Office for the District of Utah to consider: (1) whether to prosecute a defendant for criminal contempt "for failure to comply with court orders freezing his assets and appointing a receiver to locate, take control of, and preserve all of his assets"; and (2) whether to prosecute two individuals for perjury); *Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1159, 1216 (D. Utah 2011) (referring matter to the United States Attorney's Office for the District of Utah for investigation and potential criminal prosecution); *see also In re Blackmon*, No. 3:14-CV-00507-RJC, 2016 WL 4055650, at *3 (W.D.N.C. July 25, 2016) (referring matter to the United States

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, IT IS HEREBY RECOMMENDED:

1.     AAAG's Motion for Terminating Sanctions as to the Kisana Defendants[75] be granted, default judgment be entered against the Kisana Defendants on all relevant claims in AAAG's operative complaint, and all the Kisana Defendants' counterclaims against AAAG be dismissed with prejudice.

2.     AAAG be awarded its reasonable expenses, including attorney fees, incurred in connection with litigating this action against the Kisana Defendants.

3.     The Kisana Defendants' Motion to Enter Final Judgment Against the Kisana Defendants[76] be denied.

4.     This matter be referred to the United States Attorney's Office for the District of Utah for investigation and possible criminal prosecution.

\* \* \* \* \*

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[77]   The parties must file any objection to this Report and

---

Attorney's Office for possible criminal prosecution); *U.S. Commodity Futures Trading Comm'n v. Capitalstreet Fin., LLC*, No. 3:09CV387-RJC-DCK, 2010 WL 2131852, at *3 (W.D.N.C. May 25, 2010) (same); *United States v. Colorado Mufflers Unlimited, Inc.*, No. 03-CV-1310-WDM-CBS, 2005 WL 2248862, at *3 (D. Colo. Aug. 2, 2005) (same).

[75] ECF No. 522.

[76] ECF No. 548.

[77] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

Recommendation within 14 days after being served with a copy of it.[78]  Failure to object may constitute waiver of objections upon subsequent review.

DATED May 14, 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[78] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).